PARRO, J.,
concurring.
hi concur in the per curiam opinion essentially for the reasons set forth by Judge Kuhn. I write separately to emphasize the significance that the division of powers between the legislative, executive, and judicial branches of government has on the merits of this case. See LSA-Const. art. II, § 1.
The sources of law are legislation and custom. LSA-C.C. art. 1. Legislation is the superior source of law in Louisiana. LSA-C.C. art. 1, Revision Comments— 1987, comments (a) and (c). Legislation is a solemn expression of legislative will. LSA-C.C. art. 2. The Louisiana Insurance Code (Code) was enacted by the legislature to regulate the insurance industry, an *132 industry affected with the public interest, in all of its phases. See LSA-R.S. 22:2(A)(1). Pursuant to the authority contained in the Constitution of Louisiana,[1] the office of the commissioner of insurance (commissioner) was created. The duty of the commissioner is to administer the provisions of the Code. LSA-R.S. 22:2(A)(1). Louisiana Revised Statute 22:11 gives the commissioner authority to promulgate rules and regulations necessary for the “implementation” of the Code. Due |2to the commissioner’s role in the regulation of Louisiana insurance law, his opinion regarding matters within this province is persuasive. Doerr v. Mobil Oil Corp., 00-0947 (La.12/19/00), 774 So.2d 119. However, the commissioner is not the final, definitive arbiter for the interpretation and reconciliation of the Code and insurance policy language. That role is, of course, constitutionally assigned to the judiciary. ANR Pipeline Company v. Louisiana Tax Commission, 01-2594 (La.App. 1st Cir.3/20/02), 815 So.2d 178, 183-84, affirmed and remanded, 02-1479 (La.7/2/03), 851 So.2d 1145. Thus, it is the job of the courts to resolve disputes over insurance coverage. See LSA-Const. art. V, § 1;[2] Doerr, 774 So.2d at 134. By giving the commissioner the authority to administer the Code, the legislature certainly did not intend to empower the commissioner to promulgate rules and regulations that would supersede legislation.
The role of the judiciary is to apply the laws as written by the legislature. See LSA-C.C. art. 9. When a law is clear and unambiguous and its application does not lead to absurd consequences, courts are bound to apply the law as written without resort to determining the legislative intent. See LSA-C.C. art. 9. The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art.1906. Parties are free to contract for any object that is lawful, possible, and determined or determinable.[3] LSA-C.C. art.1971. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. LSA-C.C. art. 1983. The words of a contract must be given their generally prevailing meaning. LSA-C.C. art.2047. An insurance policy is a contract between the parties and should be construed |3using the general rules of interpretation of contracts set forth in the Civil Code. LeBlanc v. Aysenne, 05-0297 (La.1/19/06), 921 So.2d 85, 89. Because there is no ambiguity in the policy in question, its words should be given effect. In the absence of a conflict with a statute or *133 public policy, insurers have the same rights as individuals to limit their liability and impose whatever conditions they desire upon their obligations. Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 583, 595.
This court has previously considered whether an endorsement to an insurance policy, limiting the insurer’s liability coverage if liability was due to a statutorily-imposed parental vicarious liability, was against public policy. See Baugh v. Ray, 97-2625 (La.App. 1st Cir.5/5/99), 751 So.2d 888, 888-89. In Baugh, this court found that the law does not mandate insurance coverage for vicarious liability arising from the acts of one’s children and that there is no state law or public policy prohibiting a lower limit for parental vicarious liability. Id. I believe, under the facts of this case, that any attempt by the commissioner in issuing Directive Number 152 to establish a contrary public policy constituted an unauthorized exercise of legislative and/or judicial power.
Accordingly, I would affirm the judgment of the trial court granting Allstate’s motion for summary judgment and dismissing all claims against the homeowner’s insurer, with prejudice.

. LSA-Const. art. IV, § 11.

. It has long been the law of this land that it is emphatically the province and duty of the judicial branch to say what the law is. The judicial power is vested in Louisiana courts by Article V, Section 1 of the Louisiana Constitution. The separation of powers doctrine is set forth in LSA-Const. art. II, § 2: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.” Thus, unless authorized by the Constitution, the executive branch cannot exercise judicial power. ANR Pipeline Com-parry, 815 So.2d at 183-84. The Department of Insurance is included as part of the executive branch of state government; the commissioner serves as the executive head and chief administrative officer of the Department and is also referred to as the "secretary.” See LSA-R.S. 36:4(A)(16), 682, and 685.

.Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. LSA-C.C. art. 7.